IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MIRANDA MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CASE NO.: 2:10-cv-732-TFM |
| ) | [wo] |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Miranda Johnson Mitchell[1] ("Plaintiff" or "Mitchell" or "Johnson") filed an application for Social Security disability insurance benefits and supplemental security income on September 11, 2007, for a period of disability which allegedly began January 1, 2006. (Tr. 46, 120-128). Plaintiff's application was denied on November 2, 2007. (Tr. 48). Upon timely request by the Plaintiff on December 5, 2007 (Tr. 54), Mitchell appeared before an Administrative Law Judge ("ALJ") on June 16, 2008. (Tr. 24-45). The ALJ issued an unfavorable decision on January 28, 2010. (Tr. 7-23). Once the Appeals Council rejected review on July 28, 2010 (Tr. 1-5) the ALJ's decision became the final decision of the

---

[1]Plaintiff appears to have changed her name from Johnson to Mitchell during the course of the medical treatment. The Court has considered references to either Miranda Johnson or that of Miranda Mitchell as the same purposes of this opinion.

Page 1 of 19

Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. § 405(g) and the parties consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1. For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Mitchell seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. BACKGROUND

Mitchell was born on January 14, 1979 and was 27 years old at the time of the alleged onset of disability. (Tr. 28). Mitchell dropped out of school in the sixth grade but obtained a GED. *Id*. Mitchell's previous employment was primarily that of a "detailer or cleaner," specifically that of detailing yachts and yacht maintenance, which she performed from 1996 until 2005. (Tr. 28-30).

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

"At the hearing [Mitchell] stated that [she] was 30 years old, became disabled on January 1, 2006, has dysautonomia, Stage 3 cervical dysplasia carcinoma, syncope, and cardiomyopathy." (Tr. 13). All medical records presented by Mitchell show an expansive medical history beginning on June 6, 2005, at Palms West Hospital for torn rotator cuffs in both shoulders and lasting until March 3, 2010, when Mitchell saw Dr. Hassan Kesserwani, M.D. at the Comprehensive Neurodiagnostic Center for physical therapy for pain in left shoulder. (Tr. 174-286).

Dr. Kesserwani treated Mitchell from August 16, 2007, until March 3, 2010. (Tr. 207-211, 233-242, 285-286). Mitchell was diagnosed with Hereditary Neuralgic Amyotrophy (HNA) by Dr. Kesserwani on August 16, 2007. (Tr. 207-209). Specifically, Dr. Kesserwani stated:

> Mrs. Johnson has a rare case of HNA, which is hereditary neuralgic amyotrothy. This is a recurrent brachial plexitis. HNA can be very painful and it can be triggered in the puerperium following strenuous activity or even after a flu like illness. Familial cases have been described to be either autosomal dominant or even X-linked recessive. The other possibility is HNPP or hereditary neuropathy with liability to pressure palsy. HNPP is due to deletion of PMP-22 gene on chromosome 17.

(Tr. 208). The latter visits to Dr. Kesserwani focused primarily on the treatment of Mitchell's dizziness and anxiety. (Tr. 240 - 242, 266, 285 - 286).

The record shows that Mitchell was seen by multiple doctors over a period of years for an assortment of medical issues. Mitchell saw Jesse C. Haggerty, III, M.D., Ph.D., for at least ten visits from July 7, 2007, until September 16, 2009. (Tr. 251 - 257, 278). The

records show that it was known that Mitchell "has hereditary neuralgic amyotrophy" the primary focus of the treatment was on dysautonomia and anxiety with prescriptions for Xanax. *Id*. Mitchell was treated three times at Hearts South, PC, from May 6, 2008, until July 16, 2009. (Tr. 259 - 264). The records show a history of hereditary brachial plexitis and dysautonomia but focus on alleged heart issues wherein the doctors record "some very vague chest discomfort on occasion." *Id*. Mitchell was treated by Dr. Kenneth Farmer, M.D. at the Women's Medical Center, P.C., from September 29, 2008, through June 24, 2009. (Tr. 268 - 276). Other medical records provided by Mitchell include hospital records (Tr. 240 - 249) wherein Mitchell was treated for prenatal and postpartum evaluations by Dr. Stephen C. Coleman, D.O., and associates from January 4, 2007 through September 5, 2007. (Tr. 212 - 223).

Plaintiff was seen by Dr. H. Gordon Mitchell, M.D., as part of a Social Security Administrative referral evaluation and for a Physical Residual Functional Capacity Assessment on November 2, 2007, just prior to being seen by Dr. Kesserwani. (Tr. 224 - 231). Dr. Mitchell noted few limitations to the Plaintiff's ability to work, and that the claimant was only partially credible in her allegations that she is limited due to her physical problems. *Id*.

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis*

*v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view

the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[3] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[4] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§

---

[3] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[4] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2,

1382(a), 1382c(a)(3)(A)-(C).  Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

    (1)    Is the person presently unemployed?

---

2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[5]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if

---

[5] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or hear testimony from a Vocational Expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## V. STATEMENT OF THE ISSUES

Plaintiff alleges the ALJ made three errors. (Pl. Br. at 1). First, Plaintiff argues "the ALJ erred by substituting his judgment for that of a medical professional." *Id*. Second, Plaintiff argues "the ALJ erred in failing to recontact the treating neurologist." *Id*. Finally, Plaintiff argues "the ALJ erred by failing to properly evaluate Ms. Mitchell's Brachial Plexopathy." *Id*. The issues and arguments Mitchell raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

## VI. DISCUSSION AND ANALYSIS

**A.     The ALJ did not substitute his own judgment for that of a medical**

---

[6] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

>    **professional and established "good cause" for not giving one of the treating physicians substantial or considerable weight pursuant to the Eleventh Circuit standard**

The Court finds that the ALJ did not substitute his own judgment for that of a medical professional, but rather the ALJ did not give "substantial or considerable weight" to the opinion of one of the treating physicians. *Phillips*, 357 F.3d at 1240. Furthermore, this Court finds that the ALJ established the "good cause" required for not applying the substantial or considerable weight standard, as required by the Eleventh Circuit precedent. *Id.*

Mitchell cites several cases in which the Eleventh Circuit finds it is improper for an ALJ to "arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." (Pl. Br. 9) (quoting *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). After thorough review, the Court notes that the ALJ did conduct a comparative analysis of all the medical evidence and found "[f]or these reasons, the medical opinion of Dr. Kesserwain is given very little weight." (Tr. 19). This is not a substitution of the ALJ's own hunch or intuition, as purported by Mitchell, but is rather a case wherein the ALJ does not give substantial or considerable weight to the opinion of one of the treating physicians after establishing good cause for discarding the opinion.

The Eleventh Circuit has established that the opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary'" with the definition of good cause being:

> when: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.

*Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  In *Lewis*, the Eleventh Circuit also established that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician and that the failure to do so constitutes reversible error.  125 F.3d at 1440.  Furthermore, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record.  *Holley v. Chater*, 931 F.Supp. 840, 849 (S.D. Fla. 1996) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

However, the simple fact that a treating physician's opinion is included in the evidence does not require the ALJ to follow it but rather the opinion may be given less weight or dismissed entirely.  *Washington v. Barnhart*, 175 F. Supp. 2d 1340, 1346 (M.D. Ala. 2001) (finding that the ALJ properly considered the treating physician's medical opinions based on the objective medical evidence in the record as a whole it was "entirely reasonable" when the treating physicians records and notes were inconsistent).  When an ALJ chooses to reject the opinions of the claimant's treating physicians there needs to be sufficient detail set forth by the ALJ for the court to conduct a meaningful review.  *Pettaway v. Astrue*, Case No. 06-00880-WS-B, 2008 WL 1836738, at *14 (S.D. Ala. Apr. 21, 2008) (finding that the ALJ erred in rejecting the opinions of a treating physician because

insufficient detail was set for by the ALJ for the reviewing court to be able to conduct any kind of meaningful analysis). "'[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (noting that the "mere fact that [the ALJ] rejected their opinions is not in itself grounds for reversal").

Discretion is given to the ALJ because the Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561). In *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983), the Eleventh Circuit held "this circuit does not require an explicit finding as to credibility," but will accept the implications which are obvious to the reviewing court. It is the duty of the ALJ to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). A full and fair record enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir.1988) (internal quotations and citations omitted). This Court will reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the

proper legal analysis has been conducted." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The burden of proving disability rests on the claimant, and the claimant is responsible for producing evidence that supports her claim and allows both the ALJ and the Commissioner to reach the proper conclusion. 20 C.F.R. § 416.912(a). The Court has reviewed the record in its entirety and finds that the ALJ did not err in the rejection of the opinion of the treating physicians, Dr. Kesserwani, and that the record was developed sufficiently for this Court to determine that the ultimate decision by the ALJ is rational and supported by substantial evidence. The ALJ considered the lengthy medical history of Mitchell and provided a thorough recitation of the basic medical treatments Mitchell had over a three year period. (Tr. 13 - 19). The ALJ considered the medical evidence of the multiple treating physicians, in that there are at least two medical doctors who saw Mitchell for period of time greater than ten months.[7] *Id*.

From all of the evidence the ALJ saw several conflicts within the medical records; specifically the ALJ states "[i]t would appear that even though Dr. Kesserwani noted the claimant to be permanently disabled in 2007, he noted she was doing much better, not taking any medications, appearing healthy, and that her most serious problem was anxiety in 2009." (Tr. 18). The ALJ also noted the conflict in different treating medical opinions in that "[j]ust

---

[7]Dr. Hassan Kesserwani beginning in November 2007 through July 2009, and Dr. Jesse Haggerty from September 2008 through July 2009.

prior to Dr. Kesserwani's November 7, 2007 opinion, on September 5, 2007, the claimant reported to Dr. Coleman that she felt well." (Tr. 19). In addition to Dr. Coleman's medical records, Plaintiff was seen by Dr. Mitchell on November 2, 2007 wherein the ALJ noted that Plaintiff was "only partially credible in her allegations that she is limited due to her physical problems." (Tr. 15). Furthermore, the ALJ notes that pursuant to all of the medical records taken as a whole "the shoulder problem seems to have improved since mid-2007, as her more recent symptoms appear to relate to occasional fainting." (Tr. 18). In regards to the HNA the ALJ states "[m]ost recent medical records indicate they are monitoring her condition, which appears to be stable" and that "[n]o medications or further testing seems to be indicated." *Id*.

From these contradictions the ALJ concluded "the medical opinions of Dr. Mitchell are given considerable weight in that they are consistent and not contraindicated by the medical evidence of record." *Id.* There is no evidence that the ALJ used his own hunch or intuition in place of a diagnosis of a treating physician, rather the ALJ simply gave more weight to a medical opinion that found Mitchell "only partially credible in her allegations that she is limited due to her physical problems." (Tr. 15). The Court finds that at no time did the ALJ substitute his own judgment for that of a medical professional as alleged by Mitchell but rather, in accordance with Eleventh Circuit precedent, gave greater weight to medical evidence that supported a finding of non-disability for the Plaintiff.

**B.     The ALJ was under no duty to recontact the treating physician.**

Mitchell argues that the ALJ erred in failing to recontact the treating neurologist. (Pl. Br. 12). Plaintiff cites *Johnson v. Barnhart*, 138 Fed. Appx 266, 270 (11th Cir. 2005), which holds that "[i]f, after weighing the evidence, the Commissioner cannot reach a determination, then [he] will seek additional information or recontact the physicians." *Id.* (citing 20 C.F.R. § 404.1527(c)). The Court finds that the Commissioner was able to reach a determination which is supported by substantial evidence in the record and was therefore under no obligation or duty to recontact the treating physician.

The Eleventh Circuit holds that an ALJ does not have to recontact a treating physician if there is no need for additional information or clarification. *Osborn v. Barnhart*, 194 Fed. Appx 654, 668 (11th Cir. 2006) (finding that substantial evidence supported the ALJ's determination that the claimant was not disabled and that there was no need for additional information or clarification and therefore no duty to recontact the treating physician). Additional contact with the treating physician is only necessary where the basis of the opinion cannot be ascertained. *Shaw v. Astrue*, 392 Fed. Appx 684, 688 (11th Cir. 2010) (The ALJ did not err and was found to have made the decision on sufficient evidence when the doctor did not adequately support his position and was contradicted by other findings). The duty to recontact arises when there is not substantial evidence supporting the ALJ's determination and if the ALJ was not in possession of all medical records or that the information therein was inadequate to enable the ALJ to determine that the Plaintiff is or is

not disabled. *Couch v. Astrue*, 267 Fed. Appx. 853, 855 (11th Cir. 2008) (finding that the progress notes were sufficient in conjunction with the rest of the evidence to support the ALJ's decision to not give controlling weight to the medical opinion of the treating physician).

The ALJ carefully considered the entire record by reviewing all medical evidence presented from prior to the purported onset date until 2009, a period of time of more than three years. (Tr. 13-19). Mitchell was seen, examined, or treated by multiple medical care providers during that time period and every significant finding was taken into account by the ALJ. *Id*. After consideration of the ALJ's opinion in its entirety the Court finds that the determination made by the ALJ is supported by substantial evidence and that the information contained in the medical evidence was adequate to reach the conclusion that Mitchell is not disabled. As there is substantial evidence to support the ALJ's opinion, there is no evidence of any need for clarification or additional information on the part of the ALJ. The Court finds that the basis of the opinion is easily ascertained, thereby creating no duty on the ALJ to recontact the treating physician.

        **C.**     **The ALJ properly evaluated Plaintiff's Brachial Plexopathy.**

Mitchell argues that the ALJ erred at step 2 of the sequential evaluation process, specifically that the ALJ failed to mention Mitchell's brachial plexopathy, or "possibly combining it with the HNA diagnosis." (Pl. Br. 14).

Mitchell provides a definition of the brachial plexopathy in her brief from the U.S. National Library of Medicine web page. (Pl. Br. 15). However, the Court need not look so far afield of the evidence as that to find support for the ALJ's decision. Mitchell herself gave to the Administration a description of her illnesses, injuries, or conditions and how they affect her in her Disability Report - Adult - Form SSA-3368. (Tr. 141 - 51). In section two when asked what are the illnesses, injuries, or conditions that limit her ability to work Mitchell said:

> hereditary neuralgic amytrophy, severe ongoing bilateral shoulder pain, bilateral shoulder paralesis Hereditary neuralgic amyotrophy, is a rare syndrome mainly affecting the lower motor neurons of the *brachial plexus*.

(Tr. 142) (emphasis added). It is reasonable for the ALJ to conclude that the brachial plexus was part of the overall diagnosis of HNA based on Mitchell's own response. *Id*. Throughout the medical records treatment for pain, decreased movement, or decreased sensation in the arm(s) and shoulder(s) are noted by the ALJ. (Tr. 13 - 19). The ALJ notes that in the original diagnosis Dr. Kesserwani states that Mitchell's HNA "is a recurrent brachial plexitis." (Tr. 14). The record shows that on August 21 and 22, 2007 Mitchell was seen at Dale Medical Center for evaluation, diagnosis and treatment of braxial plexopathy, for which the only prescription given was a shoulder sling. (Tr. 15). The ALJ noted that while Mitchell was being treated by Dr. Kesserwani it was for "ongoing evaluation and treatment of hereditary neuralgic amyotrophy and brachial plexus in her left shoulder and arm." *Id*. It is clear from the record that the ALJ considered all treatments for Mitchell, in combination

and individually. The treatment of one diagnosis appears to have been incorporated and included in the treatment of the other, if they are two distinct diagnoses. (Tr. 13 - 19).

Assuming, for the purposes of this opinion only, that they are in fact distinct, the record of the ALJ shows that he considered both diagnoses. *Id*. Should there have been clearer medical evidence that could have been presented by Mitchell to distinguish the two diagnoses the ALJ's failure to consider is harmless error because substantial evidence supports the ALJ's determination. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). "[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Wright v. Barnhart*, 153 Fed. Appx 678, 684 (11th Cir. 2005) (citing *Diorio*, 721 F.2d 728); *see also Caldwell v. Barnhart*, 261 Fed. Appx 188, 191 (11th Cir. 2008) (holding that the ALJ's failure to discuss the weight of a physician's findings was harmless error because the physician's findings did not contradict the ALJ's opinions). The Court finds that even if it were to assume that the ALJ did not correctly hold the two diagnoses separate and apart there was substantial evidence to support the ALJ's finding and would constitute a harmless error.

### VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of

the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

    DONE this 16th day of December, 2011.

                              /s/ Terry F. Moorer
                              TERRY F. MOORER
                              UNITED STATES MAGISTRATE JUDGE